IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | 3:12-CR-159-D(3) |
| VS. | § | |
| | § | |
| THOMAS ALDEN MARKHAM, JR., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this memorandum opinion and order, the court addresses two pretrial motions filed by defendant Thomas Alden Markham, Jr. ("Markham"): his motion for a bill of particulars and his motion to strike references to his prior conviction from the indictment and to exclude evidence from those convictions.

I

*Motion for Bill of Particulars*

A

Markham moves for a bill of particulars. He maintains that the 24-count indictment focuses on codefendants David Kevin Lewis ("Lewis"), the chairman and director of field operations for Always Consulting, Inc. ("ACI"), and Bruce Kyle Griffith ("Griffith"), the president and chief executive officer of ACI. Markham posits that while "[t]he indictment alleges all sorts of wrongdoing by LEWIS and GRIFFITH," Mot. Bill Particulars 1, it provides no details when charging in Count One that Markham joined Lewis and Griffith's

conspiracy, and when charging in Counts Two, Seven, and Thirteen that he aided and abetted the commission of these offenses. Markham contends that Count One (the conspiracy count) "uses extremely generic descriptions of Mr. Markham's alleged participation," *id.*, and "allegations [that] are completely innocuous with respect to Mr. Markham," *id.* at 2, and that the charges in Counts Two, Seven, and Thirteen "are even more confusing," *id.* As to those counts, he maintains that the indictment appears to refer to his aiding and abetting the commission of offenses that occurred on July 10 and 26, 2006, but that the only allegations of specific conduct are inconsistent with the dates and investors involved. Markham contends that a bill of particulars is necessary because the indictment only alleges that he aided or abetted certain violations committed by the other defendants, but not how he did so; the government has not alleged that he made any affirmative misrepresentations, the evidence does not suggest that he had a duty to speak under securities law, and the indictment does not allege that he ever communicated with investors Parry or Groblebe, so he cannot prepare an adequate defense to these allegations; to secure a conviction under an aiding and abetting theory, the government must prove that he voluntarily associated with a criminal venture and participated in the criminal venture, and the indictment is impermissibly vague because it gives no notice of the government's accusations against him; and the discovery provided by the government has not alleviated the problems created by the generic charging language.

B

The purposes of a bill of particulars are to provide the defendant with sufficient notice of the charges against him so that he can prepare an adequate defense, to minimize surprise to the defendant at trial, and to enable the defendant to plead double jeopardy in the event of a subsequent prosecution. *See, e.g., United States v. Carlock*, 806 F.2d 535, 550 (5th Cir. 1986); *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973). A bill of particulars cannot be used, however, to "obtain a detailed disclosure of the government's evidence prior to trial[.]" *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (quoting *Perez*, 489 F.2d at 70-71); *see also United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980) (explaining that bill of particulars "is not designed to compel the government to detailed exposition of its evidence") (citation omitted). "[I]t is well established that generalized discovery is not a permissible goal of a bill of particulars." *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978).

In determining whether a bill of particulars is necessary, the court examines "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges against him to enable him to prepare for trial." *United States v. Martinez*, 2010 WL 2025226, at *7 (N.D. Tex. May 21, 2010) (Fitzwater, C.J.) (citations omitted); *see also United States v. Gorel*, 622 F.2d 100, 104 (5th Cir. 1979) (affirming denial of motion for bill of particulars where defendant did not show that the matters requested were necessary to inform him of the charge against him). Moreover, even if the indictment does not furnish sufficient information to enable the defendant to prepare a defense and to avoid

surprise at trial, where the government has provided the necessary information in another satisfactory form, such as through discovery, a bill of particulars is unnecessary. *See United States v. Kirkham*, 129 Fed. Appx. 61, 72 (5th Cir. 2005) (concluding that the "voluminous discovery" provided by the government "obviated the need for a bill of particulars"). The decision to grant a bill of particulars is entrusted to the court's discretion. *Carlock,* 806 F.2d at 550.

C

The court holds that Markham is not entitled to a bill of particulars. The indictment sufficiently sets forth the elements of the offenses charged, sufficiently apprises Markham of the charges against him so that he can adequately prepare for trial, and enables him to plead double jeopardy in the event of a subsequent prosecution.

Count One of the indictment charges that Lewis and Griffith conspired with Markham, ACI's chief geologist, to commit securities fraud, in violation of 18 U.S.C. § 371.[1] The alleged conspiracy and joint scheme and artifice to defraud related to the Rattlesnake Springs Drilling Program, 20 Infill Well Development, to be located on the Osage Nation Reservation in Osage County, Oklahoma ("RSDP"). RSDP is alleged to be one of several investment programs offered and sold by ACI to investors.

According to the indictment, potential investors were offered units in RSDP representing a percentage of the working interest and a corresponding net revenue interest.

---

[1]The underlying substantive offenses for the conspiracy charged are violations of 15 U.S.C. §§ 77q(a). and 77x.

Lewis, Griffith, and Markham conspired to defraud and deceive purchasers and prospective investors in well program units by misapplying and converting RSDP investor funds to their own use and benefit and to the use and benefit of others; making or and causing to be made untrue statements of material fact, and concealing material facts (eleven of which are specified in the indictment); and, in ACI's offering memorandum concerning RSDP, making and causing to be made to RSDP investors misleading and deceptive representations by omitting to state material facts (four categories of which are specified in the indictment. Stated summarily, the indictment alleges that the conspirators made or caused to be made numerous misrepresentations and omissions about ACI, its principals (chairman and director of field operations, president and chief executive officer, and chief geologist), its business and fundraising practices, and the RSDP itself in order to defraud and mislead potential investors to invest. The indictment specifies several false statements and omissions, including omissions from the ACI offering memorandum; it alleges 31 overt acts; and it alleges 23 substantive counts that are incorporated by reference as overt acts. Despite the fact that Markham is specifically named in only two overt acts and as an aider and abettor of but 3 of 23 substantive counts, "[a] defendant need only have had a minor role in the conspiracy, once it is shown that he voluntarily agreed to participate." *United States v. McKinney*, 53 F.3d 664, 672 (5th Cir. 1995) (citing *United States v. Gonzales*, 866 F.2d 781, 788 (5th Cir. 1989)).

The indictment charges that Markham aided and abetted the commission of the offenses charged in Counts Two, Seven, and Thirteen. *See* Indictment at 18, ¶ 2. The

substantive counts of the indictment incorporate by reference the allegations set forth in the introduction to the indictment and in paragraphs 2 through 7 of the conspiracy count (Count One), and are alleged as overt acts of the conspiracy; allege that Lewis and Griffith committed securities fraud in connection with 24 specific investment transactions; identify the transactions by date, investor, state, amount, and account; and charge that Markham "did unlawfully, knowingly and willfully aid, abet, counsel, command, induce and procure the commission of the offense set out above in Counts 2, 7 and 13." *Id.* at 18, ¶ 2. Considered together, the multiple parts of the indictment that together charge Markham with aiding and abetting culpability sufficiently set forth the elements of aiding and abetting, sufficiently apprise Markham of the charges against him so that he can adequately prepare for trial, and enable him to plead double jeopardy in the event of a subsequent prosecution.

Additionally, the government represents in its response to Markham's motion that it has provided him voluminous records and is providing "open file" discovery in this case. According to the government, this includes not only documentary and electronically stored evidence, but charts, summaries, witness statements of all witnesses expected to be called at trial and witnesses who will not be called at trial (including investors and potential investors, employees of ACI and the Texas State Securities Board ("TSSB")), and the TSSB's prosecution report. Such discovery also obviates the need for a bill of particulars. *Kirkham*, 129 Fed. Appx. at 72.

Accordingly, Markham's motion for a bill of particulars is denied.

II

*Motion to Strike References to Prior Conviction*

Markham moves to strike references to his prior conviction from the indictment and to exclude evidence from those convictions.[2]

A

The introduction to the indictment alleges:

> Thomas Alden Markham Jr., defendant ("Markham"), was the chief geologist of ACI. On January 11, 2000, in the United States District Court for the Western District of Texas, Markham was convicted of mail fraud in violation of 18 U.S.C. § 1341, in case number SA-99-CR-86(1)(EP). As part of his sentence Markham was ordered to pay $395,786.26 restitution to the victims of said offense.

Indictment at 2, ¶ 4 (bold font omitted). As noted above, the conspiracy count (Count One), the allegations of which are incorporated in the substantive counts, charges that it was part of the conspiracy and joint scheme and artifice that defendants, aided and abetted by each other and others, misled and deceived prospective RSDP investors by omitting to state material facts from ACI's offering memorandum, including the following:

---

[2]Markham also requests that the court exclude evidence of his conviction and that the government be required to seek a specific ruling from the court before mentioning the conviction. The court denies these requests without prejudice to his seeking this relief by motion *in limine* and/or by objection at trial. Although the court's decision today suggests that it would deny this relief, the court's decision regarding the content of the indictment does not foreclose it from reconsidering whether evidence of the conviction is admissible at trial. The decision to strike surplusage lies within the discretion of the district court, "which may reserve judgment on the motion until after the presentation of evidence at trial." 1 Charles A. Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 128, at 641-42 (4th ed. 2008).

> ACI's offering memorandum devoted a full paragraph and a separate page setting forth a summary of Markham's qualifications, stating that Markham had more than 30 years experience in the oil and gas industry as a geologist, supervisor and manager, but omitted to state:
>
> (i) that Markham was a convicted felon;
>
> (ii) that Markham had been specifically convicted of mail fraud in connection with an oil and gas offering; and
>
> (iii) that, as part of his sentence in the offense in subparagraph (ii), Markham was under a federal court order to pay $395,786 in restitution to previously defrauded oil and gas investors.

Indictment at 11, ¶ 7(d) (bold font omitted).

Markham first moves the court to strike the references to his prior conviction from the indictment on the ground that, at the time Lewis allegedly created ACI's offering memorandum, no criminal liability could arise from a failure to disclose Markham's conviction or the details around it because Item 401 of Regulation S-K, 17 C.F.R. Part 229, which applies to the directors, executive officers, and certain key employees of publicly-traded companies, only required disclosure of potentially relevant convictions that were no more than five years old, and this requirement was not increased to ten years until after the events in question were completed; ACI's disclosure obligations regarding a geologist in connection with its limited sale of RSDP did not exceed a publicly traded company's disclosure obligations with respect to a CEO; and Markham was convicted in 1999 for wire fraud, and when Lewis prepared the RSDP offering memorandum in April 2006, the conviction fell outside of the five-year window established by Item 401. Markham therefore contends that defendants had no duty to disclose Markham's 1999 conviction.

Markham posits, second, that his stale conviction was not material, particularly because he was a geologist, i.e., a technical employee who interpreted objective scientific data, whose character and integrity were not involved in the transaction as was that of a director or officer, and who was not entrusted with investor money or tasked with major business decisions.

Third, Markham asserts that, even if there was a duty under the securities laws to disclose the conviction and that the conviction was material, Item 401 demonstrates that Markham was not given fair notice of that requirement. He contends that, because the Securities and Exchange Commission ("SEC") had issued a specific regulation requiring disclosure of prior convictions that are no more than five years old, the government cannot plausibly argue that the general fraud statute unambiguously gave notice that companies must disclose even older convictions, because such a reading would violate the Due Process Clause.

Fourth, Markham maintains that, even if the court concludes that the law did impose an affirmative duty to disclose his six-year-old prior conviction, a defendant is guilty under 15 U.S.C. § 77x only if he willfully violates § 77q(a). He posits that Item 401 creates strong doubt that defeats any showing of willfulness—however that requirement is defined in this case—because Item 401 provides official guidance from the SEC suggesting that a company complies with its disclosure obligations so long as it discloses convictions of its officers and directors that are material and that are no more than five years old. Markham argues that this regulation shows that there was no legal duty to disclose his convictions because he was

neither an officer nor a director; ACI was not a publicly traded company, and the convictions were more than five years old; in addition to showing that there was no legal duty, the regulation demonstrates that the information was not material within the meaning of the securities law; and even if he is incorrect in his interpretation of securities law, the government cannot show that defendants were given fair notice that the failure to disclose Markham's conviction in the offering memorandum would subject them to criminal liability, or that any failure to disclose that conviction was criminally "willful." Markham concludes that, because no criminal liability could arise from the failure to disclose his prior conviction, the existence of the conviction is neither necessary nor relevant to this prosecution.

Markham also contends that, even if the failure to disclose the conviction is relevant to the government's case, the danger of unfair prejudice to his defense substantially outweighs whatever minimal probative value the fact would add. He reasons that the indictment alleges all kinds of wrongdoing by ACI's principals, codefendants Lewis and Griffith, including alleged failures to disclose their own convictions; that Lewis and Griffith were the principals of ACI and were principals alleged to have committed the security fraud counts in the indictment; that Markham does not anticipate that Lewis or Griffith will deny the existence of his alleged prior convictions or that these facts were omitted from the RSDP offering memorandum; that if failure to disclose a prior conviction in the offering memorandum can give rise to securities fraud liability, it will be established by proof of Lewis' and Griffith's prior convictions; and that Markham's conviction would provide little or no probative value while being gravely prejudicial to his defense.

B

Under Fed. R. Crim. P. 7(d), the court can strike surplusage from an indictment on a defendant's motion. *See* Rule 7(d); *see also* 1 Charles A. Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 128, at 641 (4th ed. 2008). The court can treat as surplusage "the allegation of additional facts beyond those which comprise the elements of the crime[.]" *United States v. Valencia*, 600 F.3d 389, 389 (5th Cir. 2010). The mere presence of surplusage is not fatal, however, to the validity of the indictment. And although "Rule 7(c)(1) requires that the indictment contain the essential facts constituting the offense, that does not mean that all other language should be stricken from the indictment." *United States v. Alexander*, 2008 WL 2130185, at *3 (W.D. La. May 18, 2008). "The purpose of [Rule] 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts." 1 Wright & Leipold, *supra*, § 128, at 641. "If, for example, the government asserts irrelevant or immaterial facts, particularly those that might prejudice the jury, the defendant may compel their deletion." *United States v. Hughes*, 766 F.2d 875, 879 (5th Cir. 1985). "[P]rosecutors have been known to insert [unnecessary facts] for 'color' or 'background' hoping that these will stimulate the interest of the jurors." *United States v. Johnson*, 1999 WL 551332, at *1 (E.D. La. June 10, 1999). The court can strike as surplusage any irrelevant language that is unduly inflammatory and prejudicial in that it "serve[s] only to inflame the jury, confuse the issues, and blur the elements necessary for conviction[.]" *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir. 1971). The court can also strike "[i]ndirect expressions, implied allegations, argumentative statements, and

uncertainty due to generalizations in language[.]" *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953).

A motion to strike surplusage should be granted, however, only if it is clear that the allegations are (1) irrelevant to the offenses charged, (2) prejudicial, and (3) inflammatory. *United States v. Smallwood*, 2011 WL 2784434, at *9-10 n.17 (N.D. Tex. July 15, 2011) (Fitzwater, C.J.) (discussing varying standards for motion to strike surplusage and following *Bullock*). The court will not strike allegations that are relevant, no matter how prejudicial or inflammatory they may be to the defendant. In other words, allegations must be both irrelevant and prejudicial to be stricken. *See, e.g.*, *United States v. Vogel*, 2010 WL 2465359, at *1 (E.D. Tex. May 21, 2010) ("[W]hen information in an indictment is relevant to the charged offense, it should not be stricken, regardless of how prejudicial it may be." (citations omitted)); *United States v. Alexander*, 2008 WL 2130185, at *2 (W.D. La. May 18, 2008) ("[I]f the allegation is admissible and relevant to the charge, then regardless of how prejudicial, the court should not strike the language." (citation omitted)); Rule 7(d) Advisory Committee's Note to 1944 enactment ("This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial."). And the "mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." *Alexander*, 2008 WL 2130185, at *2. Thus the court should first determine whether the challenged allegations are relevant to the offenses charged. If a challenged allegation is irrelevant, only then will the court determine whether the allegation is prejudicial and

inflammatory.

The decision to strike surplusage lies within the discretion of the district court, "which may reserve judgment on the motion until after the presentation of evidence at trial." 1 Wright & Leipold, *supra*, § 128 at 641-42. The standard by which the court should evaluate whether to strike surplusage is "exacting." *Bullock*, 451 F.2d at 888. "[C]ourts are often slow to grant a motion to strike surplusage." 1 Wright & Leipold, *supra*, § 128 at 647.

C

1

The court begins by setting to one side Markham's arguments that relate to whether the government can prove him guilty beyond a reasonable doubt rather than demonstrate irrelevance to the offenses charged. Markham is charged with conspiracy to commit securities fraud, in violation of 18 U.S.C.§ 371, the underlying substantive offense of which is found in 15 U.S.C. §§ 77q(a), and three counts of aiding and abetting violations of 15 U.S.C. §§ 77q(a). His third argument—that he lacked fair notice of any requirement that he disclose his prior conviction because of Item 401—and his fourth argument—that he could not have acted willfully given Item 401 and the absence of fair notice of potential criminal liability—relate to whether he acted with criminal intent. They do not demonstrate that his prior conviction is irrelevant to the offenses charged.

2

Nor are his first and second arguments—that defendants had no duty to disclose his 1999 conviction because Item 401 only required disclosure of convictions that were no more

than five years old, and his stale conviction was not material, particularly because he was a geologist—sufficient to demonstrate that his prior conviction is irrelevant to the conspiracy and substantive offenses charged.

Item 401 does not apply to a securities offering of the type alleged in this case, and Markham does not maintain that it does. Markham is essentially attempting to argue by analogy that, if disclosure would not have been required under Item 401, ACI could not have been obligated to disclose his conviction in the offering memorandum. But because Item 401 does not apply, this is at best an argument about whether Markham (or anyone with whom he allegedly conspired or whom he allegedly aided and abetted) acted with criminal intent, not whether his prior conviction is material.

Instead, the question whether the failure to disclose Markham's criminal conviction is material to the offenses charged in the indictment is determined under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).[3] Section 77q(a)(2) makes it a criminal offense, in relevant part, "to obtain money or property by means of . . . any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading[.]" The duty to disclose "arises whenever a disclosed statement would be 'misleading' in the absence of the 'disclos[ure] of [additional] material facts' needed to make it *not* misleading." *SEC. v. Fehn*, 97 F.3d 1276, 1290 n.12

---

[3]*See United States v. Bachynsky*, 415 Fed. Appx. 167, 173 (11th Cir. 2011) (holding there was duty to disclose where defendant "fail[ed] to show [Item 401] should apply in a context outside of SEC filings . . . [and to] material misrepresentations at the time of solicitation").

(9th Cir. 1996) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992) (addressing context of Rule 10b-5 claim[4]) (alteration in original)). Based on the allegations of the indictment, a reasonable jury could find that Markham's conviction was material because it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (internal quotation marks omitted).[5]

The indictment alleges that, one of the ways in which the offering memorandum omitted to state material facts that were necessary to make the statements that were made not misleading, in light of the circumstances under which they were made, was in omitting that Markham had been convicted of mail fraud in connection with an oil and gas offering, and that he was under federal court order to pay $395,786.00 in restitution to defrauded oil and gas investors, after devoting a full paragraph and a separate page setting forth a summary of Markham's qualifications, and stating that he had more than 30 years experience in the oil and gas industry as a geologist, supervisor, and manager. Indictment at 11, ¶ 7(d). The misleading nature of this omission stems from the fact that the offering memorandum encouraged investments in ACI and touted Markham's experience without also disclosing

---

[4]*Landry v. All Am. Assurance Co.*, 688 F.2d 381, 386 (5th Cir. 1982) ("Rule 10b–5, adopted under § 10(b) of the Securities and Exchange Act of 1934, is substantially identical to § 17(a)." (footnotes omitted)).

[5]Not only does Item 401 not apply here, but "[n]o authority suggests that Regulation S-K is preemptive of the materiality requirement." *SEC v. Brown*, 740 F.Supp.2d 148, 159 (D.D.C. 2010) (quoting *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1314 (S.D.N.Y. 1996)).

that Markham had been convicted of mail fraud in connection with an oil and gas offering and had a substantial restitution obligation to defrauded investors. Moreover, the omission concerning Markham must be considered in the context of alleged omissions concerning all three principals of ACI. According to the indictment, the offering memorandum touted the qualifications of each of ACI's principals—not merely Markham's—while omitting that each had one or more prior convictions. *See* Indictment at 9-11, ¶ 7. The court therefore concludes Markham's conviction is relevant to the offenses charged in the indictment.[6]

3

Accordingly, the court declines to strike Markham's conviction from the indictment, and it denies his motion to strike. *See, e.g., United States v. Solomon*, 273 F.3d 1108, 2001 WL 1131955, at *1 (5th Cir. Sept. 21, 2001) (per curiam) (unpublished opinion) ("Where information in an indictment is sufficiently relevant to the charged offense, the court should not strike it, no matter how prejudicial it may be." (citing *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)).

---

[6]This conclusion is based on the indictment and is subject to being reexamined as the case develops. *See supra* note 2.

*     *     *

For the reasons explained, the court denies Markham's October 30, 2012 motion for a bill of particulars and his November 5, 2012 motion to strike references to his prior conviction from the indictment and to exclude evidence from those convictions.

**SO ORDERED.**

February 27, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE